# EXHIBIT A



**null / ALL**
**Transmittal Number: 25085455**
**Date Processed: 06/18/2022**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Dominique Young<br>Lumber Liquidators, Inc.<br>4901 Bakers Mill Ln<br>Richmond, VA 23230-2431 |
| **Electronic copy provided to:** | Luz Gonzalez<br>Alice Givens |

| | |
|---|---|
| **Entity:** | Lumber Liquidators, Inc.<br>Entity ID Number 2634498 |
| **Entity Served:** | Lumber Liquidators, Inc. |
| **Title of Action:** | Cami Stein vs. Lumber Liquidators, Inc. |
| **Matter Name/ID:** | Cami Stein vs. Lumber Liquidators, Inc. (12458249) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Wrongful Death |
| **Court/Agency:** | Los Angeles County Superior Court, CA |
| **Case/Reference No:** | 20STCV37821 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 06/13/2022 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Hunt & Adams, Inc.<br>714-558-9000 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

Exhibit A, Page 9

Case 2:22-cv-04736 Document 1 Filed 07/11/22 Page 3 of 65 Page ID #:12

**SUMMONS**

*(CITACION JUDICIAL)*

SUM-100

20STCV37821

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LUMBER LIQUIDATORS, INC., a Delaware
Corporation; DAVID T. STEIN; TAYLOR STEIN; GRANT
STEIN; and DOES 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CAMI STEIN

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* 20STCV37821 |

LOS ANGELES SUPERIOR COURT/STANLEY MOSK COURTHOUSE
111 N. Hill Street
Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
HUNT & ADAMS, INC.     (714) 558-9000
BY: JOHN C. ADAMS III, ESQ. - BAR #88824    Sherri R. Carter Executive Officer / Clerk of Court
2070 North Tustin Ave., Santa Ana, CA 92705

| DATE: 10/01/2020 *(Fecha)* | Clerk, by *(Secretario)* R. Clifton | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Lumber Liquidators, Inc., a Delaware Corporation
   under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]     CEB Essential Forms    ceb.com

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Electronically FILED by Superior Court of California, County of Los Angeles on 10/01/2020 04:38 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk
20STCV37821

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Kristin Escalante

1    HUNT & ADAMS, INC.
      BY: JOHN C. ADAMS III, ESQ. - BAR NO. 88824
2    2070 North Tustin Avenue
      Santa Ana, California 92705-7827
3    Telephone: (714)558-9000
      Facsimile: (714)558-0152
4
      In Association With:
5
      CHAMBERS & NORONHA
6    BY: GARY L. CHAMBERS, ESQ. - BAR NO. 86076
      2070 North Tustin Avenue
7    Santa Ana, California 92705-7827
      Telephone: (714) 558-1400
8    Facsimile: (714) 558-0885

9    Attorneys for Plaintiff,
      CAMI STEIN
10

11           SUPERIOR COURT OF THE STATE OF CALIFORNIA

12        COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE

13

14    CAMI STEIN,             )   CASE NO.: 20STCV37821
                           )
15           Plaintiff,    )   COMPLAINT FOR DAMAGES FOR
                           )   WRONGFUL DEATH CAUSED BY:
16    vs.                  )
                           )   1.   Strict Products
17    LUMBER LIQUIDATORS, INC., a   )      Liability/Defective
      Delaware Corporation; and DAVID   )      Manufacture
18    T. STEIN; TAYLOR STEIN; GRANT   )   2.   Strict Products
      STEIN; and DOES 1 through 100,   )      Liability/Defective
19    inclusive,             )      Design
                           )   3.   Strict Products
20          Defendants.    )      Liability/Failure to
                           )      Warn
21    _____ )   4.   Negligence

22

23                          __DEMAND FOR JURY TRIAL__

24      Plaintiff, CAMI STEIN, alleges as follows:

25                  __GENERAL ALLEGATIONS__

26               [All Causes of Action]

27      1.    The true names or capacities, whether individual, corporate,

28    associate or otherwise of the defendants DOES 1 through 100, are

1

1  unknown to plaintiff at the time of filing of this complaint, and
2  plaintiff, therefore, sues said defendants by such fictitious names
3  and will ask leave of Court to amend this complaint to show their true
4  names or capacities when the same have been ascertained; plaintiff is
5  are informed and believes and thereon alleges that each of the DOE
6  defendants is, in some manner, legally responsible for the events and
7  happenings herein set forth and negligently and legally caused injury
8  and damages to the plaintiff as herein alleged.

9      2.  At all times herein mentioned, each of the named defendants
10 was the employee, agent and/or alter ego of each of the remaining
11 defendants and was at all times herein mentioned acting within the
12 course and scope of said agency employment, agency or legal capacity.

13     3. At all times relevant herein, defendants, LUMBER LIQUIDATORS,
14 INC., a Delaware Corporation, and DOES 1 through 50, inclusive, were,
15 respectively, the manufacturers, retailers, distributors, dealers,
16 wholesalers, component parts manufacturers, assemblers, marketers,
17 promoters, sellers and/or were otherwise engaged in the chain of
18 manufacture, distribution, sales, and wholesaling of the subject
19 laminate wood flooring containing formaldehyde and/or other chemicals
20 which causes formaldehyde gas to be released into the air in
21 unlawfully dangerous and toxic levels to human beings; in excess of
22 levels considered to be acceptable for formaldehyde gas by relevant
23 federal and state laws and regulations.

24     4.  Defendants, DOES 51 through 100, inclusive, were and are at
25 all times herein relevant, the agents and employees of defendants,
26 LUMBER LIQUIDATORS, INC., a Delaware Corporation, and DOES 1 through
27 50, doing business within the State of California, including the
28 County of Los Angeles, and were acting within the course and scope of

2

COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

1  their agency and/or employment relative thereto.

2      5.    Defendant, DAVID T. STEIN, is the surviving, estranged
3  biological father of the decedent, Tiffany S. Stein; defendant, TAYLOR
4  STEIN, is a surviving half-sibling of the decedent, Tiffany S. Stein;
5  and    defendant, GRANT STEIN, is a surviving half-sibling of the
6  decedent, Tiffany S. Stein; none of whom resided with the decedent,
7  Tiffany S. Stein, at the time of her death or during at least ten (10)
8  years prior to her death, or with the decedent's natural mother,
9  plaintiff, CAMI STEIN. Decedent, Tiffany S. Stein, was not providing
10 to, or receiving from, David T. Stein, Taylor Stein or Grant Stein any
11 financial contributions or support whatsoever at any time prior to,
12 or as of the date of, her untimely death on October 7, 2018.   Said
13 defendants are joined herein as unrepresented potential plaintiffs
14 under Code of Civil Procedure §382 only.

15     6.    Plaintiff, CAMI STEIN, is the natural mother of decedent,
16 Tiffany S. Stein.   At all times relevant herein and prior to her
17 death, decedent, Tiffany S. Stein, resided with her natural mother,
18 CAMI STEIN.    Plaintiff and the decedent were both at all times
19 relevant to this action residents of the City of Calabasas, County of
20 Los Angeles, State of California.

21     7.    On or about October 7, 2018, decedent, Tiffany S. Stein, died
22 at West Hills Hospital and Medical Center located at 7300 Medical
23 Center Drive, West Hills, CA 91307.   At all times herein relevant,
24 plaintiff alleges that the late Tiffany S. Stein's untimely death was
25 caused or contributed to Tiffany S. Stein's prior unknowing exposure
26 to, contact with, and inhalation of formaldehyde gas into her lungs
27 and her body from the emission of formaldehyde gas into her home's
28 airspace upon the installation of defendant, LUMBER LIQUIDATORS,

3

COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

1   INC.'S laminate wood flooring (as more specifically described below)
2   from on or about February 24, 2010 (when Tiffany S. Stein moved into
3   her mother's residence) up until the time of her death on October 7,
4   2018.

INTRODUCTION

6   8.   Since 1988, the State of California has recognized that
7   formaldehyde gas, inter alia, is a chemical known to cause cancer.
8   By 1991, the California Air Resources Board ("CARB") formally listed
9   formaldehyde as a contaminant with no safe level of exposure for human
10  beings.

11  9.   However, certain building materials, including laminate
12  flooring, are processed in a way that introduces formaldehyde into the
13  material during manufacturing.   In response, the CARB has passed
14  regulations limiting the amount of formaldehyde that may be present
15  therein or emitted as formaldehyde gas into the air.   Specifically,
16  the California Code of Regulations, Title 17, (which addressed public
17  health), Sections 93120 through 93120.12 are known as the Composite
18  Wood Products ("CARB Regulations").   The regulations apply to anyone
19  who manufactures, distributes, imports, sells or supplies the
20  designated materials within California.

21  10.  Defendant, LUMBER LIQUIDATORS, INC., a Delaware Corporation,
22  and DOES 1 through 50, at all times relevant to this action, was a
23  corporation that manufactured, wholesaled, retailed, distributed,
24  marketed, and/or otherwise sold laminate wood flooring products in
25  California which are subject to 17 California Code of Regulations
26  Sections 93120 through 93120.12.

27  11.  Defendant, LUMBER LIQUIDATORS, INC., a Delaware Corporation,
28  and DOES 1 through 50, supervises and controls the manufacturing of

4

COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

1  its laminate wood floor that takes place in China.   Laminate wood
2  flooring consists of a core of pressed wood [commonly referred to as
3  medium-duty fiberboard ("MDF")], which is made up of wood particles
4  bonded together with glue or resin, a high-quality photographic image
5  of wood, and a scratch-resistant coating.   On information and belief,
6  urea-formaldehyde resin was used to bond the wood particles together
7  in the MDF core of the subject laminate flooring.

8      12.   As of May 25, 2009, certain of Lumber Liquidators, Inc.'s
9  laminate wood flooring ("Formaldehyde Flooring") manufactured,
10 distributed, wholesaled, retailed, sold, and/or otherwise sold to
11 consumers (including plaintiff) within California by defendant,
12 contained formaldehyde in excess of the levels allowed under the CARB
13 Regulations in the laminate flooring which plaintiff purchased and
14 installed in her home; thus constituting a "design defect", a
15 "manufacturing defect" and a failure to "warn" consumers.

16     13. Defendant, LUMBER LIQUIDATORS, INC., a Delaware Corporation,
17 and DOES 1 through 50, at all times herein relevant, directed,
18 supervised, inspected, tested and/or had the duty to control the
19 manufacturing, labeling and packaging of its subject Formaldehyde
20 Flooring

21     14.  Plaintiff purchased the above-described formaldehyde
22 flooring, believing it to be reasonably safe to use for the purpose
23 for which they were intended and in the absence of any notice or
24 warnings by defendants, or any of them, of it containing or emitting
25 formaldehyde gas or any other toxic or dangerous chemicals.

26     15.   Defendant, LUMBER LIQUIDATORS, INC., and DOES 1 to 10,
27 is/are Delaware corporation(s) whose headquarters and principal place
28 of business is in the City of Toano, State of Virginia. Defendant

5

1   consciously, purposefully and intentionally engaged directly in
2   marketing, selling, distributing, wholesaling, retailing and otherwise
3   injecting its formaldehyde laminate wood flooring in the County of Los
4   Angeles and the State of California for profit.

5                           **FACTUAL ALLEGATIONS**

6        16.   On or about May 25, 2009, plaintiff, CAMI STEIN, purchased
7   6 mm "Dream Home Utopia Norway Oak Laminate Flooring" on line via the
8   internet at LumberLiquidators.Com; the subject laminate flooring to
9   be picked up at Lumber Liquidators Store in Ventura County and to be
10  installed into plaintiff's home located in Calabasas, County of Los
11  Angeles, California; where plaintiffsthen, and presently, resides.

12       17.   Based upon defendant's active, express and implied
13  representations at the time and plaintiffs having no reasonable
14  information to believe otherwise, plaintiffs reasonably believed that
15  the subject laminate flooring did not contain formaldehyde and was
16  non-toxic, safe and suitable for its intended use as appropriate
17  flooring material, and on that basis purchased same and had same
18  installed into their home located in Calabasas, California on or after
19  December 15, 2009.

20       18.   Once said wood laminate flooring was reasonably and
21  customarily installed as per its known and intended use (but
22  unbeknownst to plaintiff) said formaldehyde-containing wood laminate
23  flooring immediately began emitting dangerous and unlawful levels of
24  formaldehyde gas into the air within plaintiff's residence, exposing
25  decedent, Tiffany S. Stein, to said gas and directly resulted in the
26  decedent unknowingly inhaling and absorbing formaldehyde gas into her
27  lungs  and body over the next five (5) years, on a daily basis while
28  living in that residence, which were toxic, dangerous, irritating and

                                    6
                   COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

1  sensitizing concentrations of formaldehyde gas which then, inter alia,
2  the decedent inhaled into her lungs and otherwise absorbed via other
3  pathways into her lungs, blood system and body.

4      19.  At all times herein relevant, defendants and each of them
5  knew or should have known that it was unlawful for such laminate wood
6  flooring products to contain formaldehyde in such amounts as would
7  off-gas formaldehyde gas in concentrations which were toxic, harmful
8  and damaging to consumers and in violation of California and federal
9  laws and regulations related to formaldehyde gas emissions for such
10 wood laminate flooring.

11     20.  Defendants and each of them nonetheless knowingly imported
12 the subject laminate wood flooring from China without taking any
13 reasonable and legally required steps to confirm by verifiable,
14 quality-control testing and/or other reliable confirmation methods
15 available that said wood laminate flooring did not contain
16 formaldehyde in concentrations that would off-gas formaldehyde gas,
17 as would emit formaldehyde gas into the air in toxic and dangerous
18 amounts in excess of state and federal laws and regulations when
19 ultimately installed in enclosed areas for its expected and intended
20 use.

21     21.  Despite the fact that the Formaldehyde Flooring failed to
22 meet California and federal requirements for formaldehyde emissions,
23 defendant made numerous representations directly to the contrary and
24 recklessly, wilfully and intentionally marketed, distributed, sold,
25 wholesaled, retailed and marketed said formaldehyde wood laminate
26 flooring into California.

27     22. Defendant's then-existing website mislead consumers into
28 believing that its laminate wood flooring products all complied with

7

1  the CARB formaldehyde standards when, in fact, they did not.  The
2  website represented as follows:

3              "Is   Lumber   Liquidators   Compliant   with   the
4              California law?
5              **Laminate and engineered flooring products sold by**
6              **Lumber Liquidators are purchased from mills whose**
7              **production method has been certified by a Third**
8              **Party   Certifier   approved   by   the   State   of**
9              **California to meet the CARB standards.** The scope
10             of the certification by the Third Party Certifier
11             includes the confirmation that the manufacturer
12             has  implemented  the  quality  systems,  process
13             controls, and testing procedures outlined by CARB
14             and that their products conform to the specified
15             regulation limits. The Third Party Certifier also
16             provides  ongoing  oversight  to  validate  the
17             manufacturers' compliance and manufacturers must
18             be periodically re-certified.
19             Does CARB only apply to California?
20             Though it currently applies only to products sold
21             in California, **Lumber Liquidators made a decision**
22             **to require all of our vendors to comply with the**
23             **California   Air   Resources   Board   regulations**
24             **regardless  of  whether  we  intended  to  sell  the**
25             products  in  California  or  any  other
26             state/country.
27             What extra steps does Lumber Liquidators take to
28             ensure compliance?

8

COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

Exhibit A, Page 18

1       In addition to the California Air Resources Board

2       requirements, Lumber Liquidators regularly

3       selects one or more finished products from each

4       of its suppliers and submits them for independent

5       third-party lab testing. This is done as a

6       monitoring activity to validate ongoing quality

7       control."

8      23.   After the dangerous formaldehyde levels in Lumber

9 Liquidators' products was made public for the first time on the CBS

10 News program "60 Minutes" (on or about March 1, 2015), Lumber

11 Liquidators responded by posting a letter from its Chairman on its

12 website wrongfully stating:

13       "Let me make one thing very clear – our laminate

14       products, **all** of our products, are 100% **safe**.

15       (Emphasis added.)

16       ...

17       We comply with applicable regulations regarding

18       our products, including California standards for

19       formaldehyde emissions for composite wood

20       products – the most stringent rules in the

21       country. We take our commitment to safety even

22       further by employing compliance personnel around

23       the world and utilizing the latest in cutting-

24       edge technology to provide our customers with top

25       quality and high value flooring."

26 These statements were untrue and known by Lumber Liquidators not to

27 be correct at the time they were made.

28      24.   Moreover, the product packaging for defendant's laminate

9

1  wood flooring stated: "CARB . . . CALIFORNIA 93120 Phase 2 Compliant
2  for Formaldehyde." On information and belief, this statement was not
3  true but still misrepresented on all of defendant's laminate flooring
4  product packaging (including the product sold to plaintiff herein)
5  regardless of whether the flooring inside the packaging complies with
6  the CARB standards and was, therefore, untrue as to the subject Lumber
7  Liquidators flooring purchased by plaintiff as alleged herein.

8      25. On information and belief, at all times relevant to this
9  action, defendant had knowingly misrepresented its laminate wood
10 flooring products as CARB compliant and defendant knowingly failed to
11 disclose to consumers the unlawful and potentially harmful levels of
12 formaldehyde emissions from its laminate wood flooring products.

13     26. Plaintiff did not discover, nor would a reasonable consumer
14 have had reason to suspect that defendant knowingly misrepresented its
15 laminate wood flooring products as CARB compliant or that defendant
16 knowingly failed to disclose to consumers the unlawful levels of
17 formaldehyde emissions from its laminate wood flooring products until
18 March 1, 2015, when the "60 Minutes" report first publicized it.

19     27. As the direct result of all of the above-alleged acts and
20 omissions of defendants, and each of them, plaintiff reasonably relied
21 upon defendant's representations and the lack of any warnings to the
22 contrary in believing that the subject laminate flooring was non-
23 toxic, safe and suitable for its intended use as appropriate flooring
24 material, and on that basis had same installed into the residence
25 located in Calabasas, California on or after December 15, 2009.

26     28. As a direct and legal result of the above-alleged
27 negligence, carelessness, recklessness, wantonness and unlawfulness
28 of defendants, and each of them, and their resulting exposure to the

10

1  off-gassing of formaldehyde gas in the subject laminate wood flooring,
2  decedent, Tiffany S. Stein, sustained protracted severe, serious and
3  continuous bodily injuries, including but not limited to, toxic
4  chemical insult, injury, damage, irritation, sensitization, pulmonary
5  and immuno-reactions and diseases caused by said long-term exposure
6  toxicity, irritation, sensitization, reaction, injury and damage to
7  plaintiffs' lungs and immune systems and multiple other resulting
8  medical conditions, ultimately causing and/or contributing to Tiffany
9  Stein's untimely death on October 7, 2018 at the age of 29 years.

10      29.  As the direct result of all of the above-alleged acts and
11 omissions of defendants, and each of them, plaintiff, CAMI STEIN, has
12 suffered the loss of the love, companionship, comfort, affection,
13 society, solace, and moral support of her beloved daughter, Tiffany
14 S. Stein, in a sum within the jurisdiction of this Court to be
15 determined according to proof at trial.

16      30.  As the direct result of all of the above-alleged acts and
17 omissions of defendants, and each of them, plaintiff has incurred
18 medical expenses, funeral and/or burial expenses in a sum within the
19 jurisdiction of this Court to be determined according to proof at
20 trial.

21                          **FIRST CAUSE OF ACTION**

22                        **[Strict Products Liability-**
                              **Defective Manufacture]**
23

24      31.  Plaintiff hereby realleges each and every allegation
25 contained in paragraphs 1 through 30, inclusive. and incorporates the
26 same herein as though set forth in full.

27      32.  At all times relevant to this action, the defendants, and
28 each of them, were responsible for designing, specifying, developing,

                                  11

1  manufacturing, formulating, licensing, franchising, testing,
2  packaging, promoting, marketing, distributing, labeling and for
3  selling, directly and/or indirectly through third parties or related
4  entities the subject Formaldehyde Flooring.

5      33.   At all times relevant to this action, the Formaldehyde
6  Flooring products were expected to reach, and did reach, consumers in
7  the State of California and throughout the United States, including
8  plaintiffs, without substantial change in the chemical composition in
9  which they were when they were manufactured and placed into the stream
10 of commerce.

11     34.   At all times relevant to this action, the Formaldehyde
12 Flooring products were designed, developed, manufactured, formulated,
13 licensed, franchised, tested, packaged, promoted, marketed,
14 distributed, labeled and/or sold by the defendants, and each of them,
15 in a defective and unreasonably dangerous condition at the time they
16 were placed in the stream of commerce in ways which included, but were
17 not limited to, one or more of the following particulars:

18         (a)   When placed in the stream of commerce by defendants,
19 and each of them, the subject the Formaldehyde Flooring products
20 contained manufacturing defects that rendered the products
21 unreasonably dangerous in that they contained formaldehyde, and/or
22 other chemicals which would, when used as intended, off-gas
23 formaldehyde into the air; and,

24         (b)   No reasonable warnings or disclosures were indicated
25 in the product packaging, inserts, labels or promotion/advertising
26 literature or otherwise communicated to consumers, including
27 plaintiffs, that the laminate wood flooring product contained, and or
28 would off-gas, formaldehyde gas after plaintiffs' installation into

                                   12

1  the air of any enclosed room or space where it was installed.

2      35.  As a direct result of said manufacturing defects, once said
3  Formaldehyde Flooring products were placed into the stream of commerce
4  for use without inspection or testing, and the decedent, Tiffany S.
5  Stein, was injured and damaged as hereinabove previously alleged when
6  plaintiff purchased the subject the Formaldehyde Flooring products and
7  installed them into her residence as directed, instructed and
8  anticipated by defendants and each of them, and was thereby
9  unknowingly exposed to, and inhaled  or otherwise absorbed, inter
10  alia, formaldehyde gas into the decedent's lungs and body.

11      36.  As a direct and legal result of the above-alleged
12  negligence, carelessness, recklessness, wantonness and unlawfulness
13  of defendants, and each of them, and their resulting exposure to the
14  off-gassing of formaldehyde gas in the subject laminate wood flooring,
15  decedent, Tiffany S. Stein, sustained protracted severe, serious and
16  continuous bodily injuries, including but not limited to, toxic
17  chemical insult, injury, damage, irritation, sensitization, pulmonary
18  and immuno-reactions and diseases caused by said long-term exposure
19  toxicity, irritation, sensitization, reaction, injury and damage to
20  plaintiffs' lungs and immune systems and multiple other resulting
21  medical conditions, ultimately causing and/or contributing to Tiffany
22  Stein's untimely death on October 7, 2018 at the age of 29 years.

23      37.  As the direct result of all of the above-alleged acts and
24  omissions of defendants, and each of them, plaintiff, CAMI STEIN, has
25  suffered the loss of the love, companionship, comfort, affection,
26  society, solace, and moral support of her beloved daughter, Tiffany
27  S. Stein, in a sum within the jurisdiction of this Court to be
28  determined according to proof at trial.

COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

1    38.   As the direct result of all of the above-alleged acts and
2  omissions of defendants, and each of them, plaintiff has incurred
3  medical expenses, funeral and/or burial expenses in a sum within the
4  jurisdiction of this Court to be determined according to proof at
5  trial.

6                        **SECOND CAUSE OF ACTION**

7            **[Strict Products Liability-Defective Design]**

8    39.   Plaintiff hereby realleges each and every allegation
9  contained in paragraphs 1 through 36, inclusive, and incorporates the
10 same herein as though set forth in full.

11   40.   At all times relevant to this action, defendants, and each
12 of them, were responsible for designing, manufacturing, formulating,
13 licensing, franchising, testing, packaging, promoting, marketing,
14 distributing, labeling and for selling, directly and indirectly,
15 through third parties and/or related entities the Formaldehyde
16 Flooring products which are defective and unreasonably dangerous to
17 users and/or consumers of the products, including plaintiffs.

18   41.   At all times relevant to this action, the Formaldehyde
19 Flooring products were designed, developed, manufactured, formulated,
20 licensed, franchised, tested, packaged, promoted, marketed,
21 distributed, labeled and/or sold by the defendants, and each of them,
22 in a defective and unreasonably dangerous condition at the time they
23 were placed in the stream of commerce in ways which included, but were
24 not limited to, one or more of the following particulars:

25         (a)   When placed in the stream of commerce, defendants knew,
26 or should have known, that their Formaldehyde Flooring products
27 contained formaldehyde which defendants knew, or should have known,
28 was such as to cause, inter alia, toxic and dangerous concentrations

                                    14

1  of formaldehyde gas to be released into the air when used as directed,

2  instructed and anticipated; including, inter alia, unlawful and

3  dangerous concentrations of toxic formaldehyde gas which defendants

4  knew was medically and scientifically known to cause serious health

5  risks and conditions as hereinabove previously alleged to consumers

6  when inhaled and/or absorbed.

7      (b)   The release of formaldehyde gas by the subject

8  Formaldehyde Flooring products created serious health and injury risks

9  that far outweighed its intended purposes but which defendants

10  negligently and unreasonably misrepresented was "formaldehyde free"

11  and did not contain any other "harsh chemicals" or harmful non-natural

12  ingredients on its labeling and in other product information and/or

13  promotional literature.

14      (c)   No warnings or disclosures were indicated in the

15  product packaging, inserts, labels or promotion/advertising literature

16  or otherwise communicated to consumers, including plaintiffs, that the

17  laminate wood flooring product contained or would off-gas formaldehyde

18  after installation into the air.

19      42.  In light of the scientifically and medically known potential

20  and actual risks of harm associated with the products' use, a

21  reasonable person who had actual knowledge of these potential risks

22  of harm would have concluded that the Formaldehyde Flooring products

23  should not have been manufactured, formulated, marketed and sold in

24  California in that condition for its intended use and purpose as

25  directed and instructed by defendants.

26      43.  At all relevant times herein, there existed safe and non-

27  toxic, alternative "designs" and/or formulations for manufacturing

28  laminate flooring, not involving the incorporation of formaldehyde in

COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

the flooring or resulting in the off-gassing of formaldehyde gas or any other toxic gases or chemicals.

44.   At all times relevant herein, defendants, and each of them, knew, or should have known, that the Formaldehyde Flooring products would be purchased by consumers of the general public and would be installed without any inspections or testing for defects or dangerous ingredients, and that consumers would rely upon the representations made by each of the defendants on the product label and in other promotional and sales materials as to same.

45.   Defendants, and each of them, knew or should have known of the defective nature of the Formaldehyde Flooring products but continued to promote, sell, develop, manufacture, formulate, license, franchise, package, formulate, test, label, distribute, market, and otherwise release these the Formaldehyde Flooring products into the stream of commerce so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by their products, including serious health risks, including but not limited to, difficulty breathing, asthma, lung irritation and other damage, and other adverse health and medical problems; to be shown according to proof.

46.   At all times relevant herein, plaintiff used the Formaldehyde Flooring products as instructed and directed for their intended or reasonably foreseeable purpose.

47.   As a direct and legal result of the above-alleged negligence, carelessness, recklessness, wantonness and unlawfulness of defendants, and each of them, and their resulting exposure to the off-gassing of formaldehyde gas in the subject laminate wood flooring, decedent, Tiffany S. Stein, sustained protracted severe, serious and

1  continuous bodily injuries, including but not limited to, toxic
2  chemical insult, injury, damage, irritation, sensitization, pulmonary
3  and immuno-reactions and diseases caused by said long-term exposure
4  toxicity, irritation, sensitization, reaction, injury and damage to
5  plaintiffs' lungs and immune systems and multiple other resulting
6  medical conditions, ultimately causing and/or contributing to Tiffany
7  Stein's untimely death on October 7, 2018 at the age of 29 years.

8      48.  As the direct result of all of the above-alleged acts and
9  omissions of defendants, and each of them, plaintiff, CAMI STEIN, has
10 suffered the loss of the love, companionship, comfort, affection,
11 society, solace, and moral support of her beloved daughter, Tiffany
12 S. Stein, in a sum within the jurisdiction of this Court to be
13 determined according to proof at trial.

14     49.  As the direct result of all of the above-alleged acts and
15 omissions of defendants, and each of them, plaintiff has incurred
16 medical expenses, funeral and/or burial expenses in a sum within the
17 jurisdiction of this Court to be determined according to proof at
18 trial.

19                 **THIRD CAUSE OF ACTION**

20        **[Strict Products Liability-Failure to Warn]**

21     50.  Plaintiff hereby realleges each and every allegation
22 contained in paragraphs 1 through 49, inclusive. and incorporates the
23 same herein as though set forth in full.

24     51.  At all times relevant to this action, the defendants were
25 responsible for designing, developing, manufacturing, formulating,
26 licensing, franchising, testing, packaging, promoting, marketing,
27 distributing, labeling and for selling, directly and indirectly,
28 through third parties and/or related entities the subject Formaldehyde

17

1   Flooring products.

2      52.   At all times relevant to this action, the Formaldehyde
3   Flooring products were designed, developed, manufactured, tested,
4   packaged, promoted, marketed, distributed, labeled and/or sold by the
5   defendants, and each of them, in a defective and unreasonably
6   dangerous condition at the time they were placed in the stream of
7   commerce in ways which included, but were not limited to, one or more
8   of the following particulars:

9          (a)   No warnings or disclosures were indicated in the
10  product packaging, inserts, labels or promotion/advertising literature
11  or otherwise communicated to consumers, including plaintiffs, that the
12  laminate wood flooring product contained or would off-gas formaldehyde
13  after installation into the air.

14     53. As a direct and legal result of the above-alleged negligence,
15  carelessness, recklessness, wantonness and unlawfulness of defendants,
16  and each of them, and their resulting exposure to the off-gassing of
17  formaldehyde gas in the subject laminate wood flooring, decedent,
18  Tiffany S. Stein, sustained protracted severe, serious and continuous
19  bodily injuries, including but not limited to, toxic chemical insult,
20  injury, damage, irritation, sensitization, pulmonary and immuno-
21  reactions and diseases caused by said long-term exposure toxicity,
22  irritation, sensitization, reaction, injury and damage to plaintiffs'
23  lungs and immune systems and multiple other resulting medical
24  conditions, ultimately causing and/or contributing to Tiffany Stein's
25  untimely death on October 7, 2018 at the age of 29 years.

26     54.   As the direct result of all of the above-alleged acts and
27  omissions of defendants, and each of them, plaintiff, CAMI STEIN, has
28  suffered the loss of the love, companionship, comfort, affection,

18

COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

1 | society, solace, and moral support of her beloved daughter, Tiffany
2 | S. Stein, in a sum within the jurisdiction of this Court to be
3 | determined according to proof at trial.

4 |     55.  As the direct result of all of the above-alleged acts and
5 | omissions of defendants, and each of them, plaintiff has incurred
6 | medical expenses, funeral and/or burial expenses in a sum within the
7 | jurisdiction of this Court to be determined according to proof at
8 | trial.

9 | **FOURTH CAUSE OF ACTION**

10 | **[Negligence]**

11 |     56.  Plaintiff hereby realleges each and every allegation
12 | contained in paragraphs 1 through 55, inclusive. and incorporates the
13 | same herein as though set forth in full.

14 |     57.  Defendants, and each of them, in committing the acts and/or
15 | omissions hereinabove alleged regarding the sale, promotion,
16 | marketing, labeling, supplying, and distributing of the subject the
17 | Formaldehyde Flooring products containing and emitting dangerous toxic
18 | and unlawful concentrations of formaldehyde gas, acted negligently,
19 | unreasonably, unlawfully, recklessly and carelessly as to the
20 | potential injuries and damages defendants knew, or should have known
21 | in the exercise of reasonable care, would likely cause if used in its
22 | intended and foreseeable manner consistent with the instructions and
23 | directions provided by defendants and in failing to reasonably warn
24 | consumers of this known toxic, chemical danger and health risk.

25 |     58. As a direct and legal result of the above-alleged negligence,
26 | carelessness, recklessness, wantonness and unlawfulness of defendants,
27 | and each of them, and their resulting exposure to the off-gassing of
28 | formaldehyde gas in the subject laminate wood flooring, decedent,

1  Tiffany S. Stein, sustained protracted severe, serious and continuous
2  bodily injuries, including but not limited to, toxic chemical insult,
3  injury, damage, irritation, sensitization, pulmonary and immuno-
4  reactions and diseases caused by said long-term exposure toxicity,
5  irritation, sensitization, reaction, injury and damage to plaintiffs'
6  lungs and immune systems and multiple other resulting medical
7  conditions, ultimately causing and/or contributing to Tiffany Stein's
8  untimely death on October 7, 2018 at the age of 29 years.

9      59.  As the direct result of all of the above-alleged acts and
10  omissions of defendants, and each of them, plaintiff, CAMI STEIN, has
11  suffered the loss of the love, companionship, comfort, affection,
12  society, solace, and moral support of her beloved daughter, Tiffany
13  S. Stein, in a sum within the jurisdiction of this Court to be
14  determined according to proof at trial.

15      60.  As the direct result of all of the above-alleged acts and
16  omissions of defendants, and each of them, plaintiff has incurred
17  medical expenses, funeral and/or burial expenses in a sum within the
18  jurisdiction of this Court to be determined according to proof at
19  trial.

20      WHEREFORE, plaintiff prays for judgment against defendants, and
21  each of them, as follows:

22              **AS TO ALL CAUSES OF ACTION**

23      1.  For wrongful death damages in a sum within the jurisdiction
24  of this Court to be determined according to proof;

25      2.  For medical expenses, funeral and burial expenses in a sum
26  within the jurisdiction of this Court to be determined according to
27  proof;

28      3.  For interest and pre-judgment costs as provided by law; and

20

COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

1    4.    For costs of suit and for such other and further relief as
2    the Court deems proper.

3

4    DATED:   October 1, 2020          HUNT & ADAMS, INC.
5                                       CHAMBERS & NORONHA

6

7                                BY: _____
                                      JOHN C. ADAMS III
8                                     Attorneys for Plaintiff,
                                      CAMI STEIN
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              21

CM-010

Electronically FILED by Superior Court of California, County of Los Angeles on 10/01/2020 01:03 PM R. Carter, Executive Officer/Clerk of Court, by R. Clifton, Deputy Clerk

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| HUNT & ADAMS, INC. <br> BY:  JOHN C. ADAMS III - BAR #88824 <br> 2070 North Tustin Avenue <br> Santa Ana, CA  92705 <br> TELEPHONE NO.: (714) 558-9000   FAX NO.: (714) 558-0152 <br> ATTORNEY FOR *(Name):* Plaintiff, CAMI STEIN | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES |
|---|
| STREET ADDRESS: 111 N. Hill Street <br> MAILING ADDRESS: <br> CITY AND ZIP CODE: Los Angeles, CA  90012 <br> BRANCH NAME: STANLEY MOSK COURTHOUSE |

| CASE NAME: STEIN v. LUMBER LIQUIDATORS, INC., et al. |
|---|

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder <br> Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 20STCV37821 <br> JUDGE: <br> DEPT.: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[X] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* Four (4)
5. This case [ ] is  [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: October 1, 2020

JOHN C. ADAMS III
_____
(TYPE OR PRINT NAME)          ▶          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> www.courtinfo.ca.gov

Exhibit A, Page 32

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| STEIN v. LUMBER LIQUIDATORS, INC., et al. | |

**CIVIL CASE COVER SHEET ADDENDUM AND**
**STATEMENT OF LOCATION**
**(CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)**

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

**Applicable Reasons for Choosing Court Filing Location (Column C)**

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties resides.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C   Applicable Reasons - See Step 3 Above |
|---|---|---|
| **Auto Tort** | | |
| Auto (22) | ☐ A7100   Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| Uninsured Motorist (46) | ☐ A7110   Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | | |
| Asbestos (04) | ☐ A6070   Asbestos Property Damage<br>☐ A7221   Asbestos – Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| Product Liability (24) | ☒ A7260   Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| Medical Malpractice (45) | ☐ A7210   Medical Malpractice - Physicians & Surgeons<br>☐ A7240   Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250   Premises Liability (e.g., slip and fall)<br>☐ A7230   Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270   Intentional Infliction of Emotional Distress<br>☐ A7220   Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br><br>1, 4, 11<br>1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

CEB® Essential Forms
ceb.com

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| STEIN v. LUMBER LIQUIDATORS, INC., et al. | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**   Applicable<br>Reasons – See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐  A6029   Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐  A6005   Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐  A6010   Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐  A6013   Fraud (no contract) | 1, 2, 3 |
| | Professional<br>Negligence<br>(25) | ☐  A6017   Legal Malpractice<br>☐  A6050   Other Professional Malpractice (not medical or legal) | 1, 2, 3<br>1, 2, 3 |
| | Other (35) | ☐  A6025   Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination<br>(36) | ☐  A6037   Wrongful Termination | 1, 2, 3 |
| | Other Employment<br>(15) | ☐  A6024   Other Employment Complaint Case<br>☐  A6109   Labor Commissioner Appeals | 1, 2, 3<br>10 |
| **Contract** | Breach of Contract/<br>Warranty<br>(06)<br>(not insurance) | ☐  A6004   Breach of Rental/Lease Contract (not unlawful detainer or<br>           wrongful eviction)<br>☐  A6008   Contract/Warranty Breach-Seller Plaintiff (no fraud/negligence)<br>☐  A6019   Negligent Breach of Contract/Warranty (no fraud)<br>☐  A6028   Other Breach of Contract/Warranty (not fraud or negligence) | 2, 5<br><br>2, 5<br>1, 2, 5<br>1, 2, 5 |
| | Collections<br>(09) | ☐  A6002   Collections Case-Seller Plaintiff<br>☐  A6012   Other Promissory Note/Collections Case<br>☐  A6034   Collections Case-Purchased Debt (Charged Off Consumer Debt<br>           Purchased on or after January 1, 2014) | 5, 6, 11<br>5, 11<br>5, 6, 11 |
| | Insurance Coverage<br>(18) | ☐  A6015   Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract<br>(37) | ☐  A6009   Contractual Fraud<br>☐  A6031   Tortious Interference<br>☐  A6027   Other Contract Dispute (not breach/insurance/fraud/negligence) | 1, 2, 3, 5<br>1, 2, 3, 5<br>1, 2, 3, 8, 9 |
| **Real Property** | Eminent<br>Domain/Inverse<br>Condemnation (14) | ☐  A7300   Eminent Domain/Condemnation       Number of parcels | 2, 6 |
| | Wrongful Eviction<br>(33) | ☐  A6023   Wrongful Eviction Case | 2, 6 |
| | Other Real Property<br>(26) | ☐  A6018   Mortgage Foreclosure<br>☐  A6032   Quiet Title<br>☐  A6060   Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6<br>2, 6<br>2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-<br>Commercial (31) | ☐  A6021   Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-<br>Residential (32) | ☐  A6020   Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-<br>Post-Foreclosure (34) | ☐  A6020F  Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-<br>Drugs (38) | ☐  A6022   Unlawful Detainer-Drugs | 2, 6, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

CEB | Essential Forms
ceb.com

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

Exhibit A, Page 34

| SHORT TITLE: | CASE NUMBER |
|---|---|
| STEIN v. LUMBER LIQUIDATORS, INC., et al. | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | | C   Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108 | Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration<br>(11) | ☐ A6115 | Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate<br>(02) | ☐ A6151<br>☐ A6152<br>☐ A6153 | Writ - Administrative Mandamus<br>Writ - Mandamus on Limited Court Case Matter<br>Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| | Other Judicial Review<br>(39) | ☐ A6150 | Other Writ/Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003 | Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect<br>(10) | ☐ A6007 | Construction Defect | 1, 2, 3 |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006 | Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation<br>(28) | ☐ A6035 | Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036 | Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014 | Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br>(20) | ☐ A6141<br>☐ A6160<br>☐ A6107<br>☐ A6140<br>☐ A6114<br>☐ A6112 | Sister State Judgment<br>Abstract of Judgment<br>Confession of Judgment (non-domestic relations)<br>Administrative Agency Award (not unpaid taxes)<br>Petition/Certificate for Entry of Judgment on Unpaid Tax<br>Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033 | Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above)<br>(42) | ☐ A6030<br>☐ A6040<br>☐ A6011<br>☐ A6000 | Declaratory Relief Only<br>Injunctive Relief Only (not domestic/harassment)<br>Other Commercial Complaint Case (non-tort/non-complex)<br>Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113 | Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121<br>☐ A6123<br>☐ A6124<br>☐ A6190<br>☐ A6110<br>☐ A6170<br>☐ A6100 | Civil Harassment With Damages<br>Workplace Harassment With Damages<br>Elder/Dependent Adult Abuse Case With Damages<br>Election Contest<br>Petition for Change of Name/Change of Gender<br>Petition for Relief from Late Claim Law<br>Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

CEB® | Essential
ceb.com | Forms

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

Exhibit A, Page 35

| SHORT TITLE: | CASE NUMBER |
|---|---|
| STEIN v. LUMBER LIQUIDATORS, INC., et al. | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☐1. ☐2. ☐3. ☒4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. ☐11. | 7300 Medical Center Drive |

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| West Hills | CA | 91307 |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the   STANLEY MOSK COURTHOUSE         District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: **October 1, 2020**

_(signature)_

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.

2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.

3.  Civil Case Cover Sheet, Judicial Council form CM-010.

4.  Civil Case Cover Sheet Addendum and Statement of Location form, LASC CIV 109, LASC Approved 03-04 (Rev. 12/18).

5.  Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6.  A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use
CEB® | Essential
ceb.com | Forms®

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.3
Page 4 of 4

**FILED**

Superior Court of California
County of Los Angeles

**FEB 24 2020**

2020-SJ-002-00

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Corina Albino

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE PERSONAL INJURY<br>COURT ("PI COURT") PROCEDURES<br>SPRING STREET COURTHOUSE<br>(EFFECTIVE FEBRUARY 24, 2020) | ) CASE NO.:<br>)<br>) FIRST AMENDED STANDING ORDER<br>) RE: PERSONAL INJURY PROCEDURES<br>) AT THE SPRING STREET COURTHOUSE |

---

**ALL HEARINGS ARE SET IN THE DEPARTMENT AS REFLECTED IN THE NOTICE OF CASE ASSIGNMENT**

**FINAL STATUS CONFERENCE:**

      DATE: _____ AT 10:00 A.M.

**TRIAL:**

      DATE: _____ AT 8:30 A.M.

**OSC RE DISMISSAL
(CODE CIV. PROC., § 583.210):**

      DATE: _____ AT 8:30 A.M.

---

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

Pursuant to the California Code of Civil Procedure ("C.C.P."), the California Rules of Court ("C.R.C.") and the Los Angeles County Court Rules ("Local Rules"), the Los Angeles Superior Court ("LASC" or "Court") HEREBY AMENDS AND SUPERSEDES THE SEPTEMBER 26, 2019 STANDING ORDER AND, GENERALLY ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION PERSONAL INJURY ("PI") ACTIONS FILED IN THE CENTRAL DISTRICT.

///

2020-SJ-002-00

1.       To ensure proper assignment to a PI Court, plaintiff(s) must carefully fill out the Civil Case Cover Sheet Addendum (form LACIV 109). The Court defines "personal injury" as: "an unlimited civil case described on the Civil Case Cover Sheet Addendum and Statement of Location (LACIV 109) as Motor Vehicle-Personal Injury/Property Damage/Wrongful Death; Personal Injury/Property Damage/Wrongful Death-Uninsured Motorist; Product Liability (other than asbestos or toxic/environmental); Medical Malpractice-Physicians & Surgeons; Other Professional Health Care Malpractice; Premises Liability; Intentional Bodily Injury/Property Damage/Wrongful Death; or Other Personal Injury/Property Damage/Wrongful Death. An action for intentional infliction of emotional distress, defamation, civil rights/discrimination, or malpractice (other than medical malpractice), is not included in this definition. An action for injury to real property is not included in this definition" (Local Rule 2.3(a)(1) (A)).

Consistent with Local Rule 2.3(a)(1)(A), the Court will assign a case to the PI Courts if plaintiff(s) checks any of the following boxes in the Civil Case Cover Sheet Addendum:

☐ A7100 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death

☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist

☐ A7260 Product Liability (not asbestos or toxic/environmental)

☐ A7210 Medical Malpractice – Physicians & Surgeons

☐ A7240 Medical Malpractice – Other Professional Health Care Malpractice

☐ A7250 Premises Liability (e.g., slip and fall)

☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism etc.)

☐ A7220 Other Personal Injury/Property Damage/Wrongful Death

The Court will not assign cases to the PI Courts if plaintiff(s) checks any boxes elsewhere in the Civil Case Cover Sheet Addendum (any boxes on pages two and three of that form).

The Court sets the above dates in this action in the PI Court as reflected in the Notice of Case Assignment at the Spring Street Courthouse, 312 North Spring Street, Los Angeles, CA

First Amended Standing Order Re Personal Injury Procedures, Spring Street Courthouse

2020-SJ-002-00

90012 (C.R.C. Rules 3.714(b)(3), 3.729).

**FILING OF DOCUMENTS**

2.      With the exception of self-represented litigants or parties or attorneys that have obtained an exemption from mandatory electronic filing, parties must electronically file documents. Filings are no longer accepted via facsimile.  The requirements for electronic filing are detailed in the Court's operative General Order Re Mandatory Electronic Filing for Civil, available online at www.lacourt.org (link on homepage).

**SERVICE OF SUMMONS AND COMPLAINT**

3.      Plaintiff(s) shall serve the summons and complaint in this action upon defendant(s) as soon as possible but no later than three years from the date when the complaint is filed (C.C.P. § 583.210, subd. (a)).  On the OSC re Dismissal date noted above, the PI Court will dismiss the action and/or all unserved parties unless the plaintiff(s) shows cause why the action or the unserved parties should not be dismissed (C.C.P. §§ 583.250; 581, subd. (b)(4)).

4.      The Court sets the above trial and final status conference ("FSC") dates on the condition that plaintiff(s) effectuate service on defendant(s) of the summons and complaint within six months of filing the complaint.

5.      The PI Court will dismiss the case without prejudice pursuant to Code of Civil Procedure § 581 when no party appears for trial.

**STIPULATIONS TO CONTINUE TRIAL**

6.      Provided that all parties agree (and there is no violation of the "five-year rule" (C.C.P. § 583.310)), the parties may advance or continue any trial date in the PI Courts without showing good cause or articulating any reason or justification for the change.  To continue or advance a trial date, the parties (or their counsel of record) should jointly execute and submit a Stipulation to Continue Trial, FSC and Related Motion/Discovery Dates (form LACIV CTRL-242, available on the court's website, Personal Injury Court link).  The PI Courts schedule FSCs at 10:00 a.m., eight court days before the trial date.  Parties seeking to continue the trial and FSC dates shall file the stipulation at least eight court days before the FSC date.   Parties seeking to advance the trial and FSC dates shall file the stipulation at least eight court days before the proposed advanced

Page 3 of 7

First Amended Standing Order Re Personal Injury Procedures, Spring Street Courthouse

2020-SJ-002-00

1  FSC date (C.C.P. § 595.2;  Govt. Code § 70617, subd. (c)(2)). In selecting a new trial date,

2  parties should avoid setting on any Monday, or the Tuesday following a court holiday. Parties

3  may submit a maximum of two stipulations to continue trial, for a total continuance of six

4  months. Subsequent requests to continue trial will be granted upon a showing of good cause by

5  noticed motion.  This rule is retroactive so that any previously granted stipulation to continue

6  trial will count toward the maximum number of allowed continuances.

7  **NO CASE MANAGEMENT CONFERENCES**

8  7.      The PI Courts do not conduct case management conferences. The parties need not file a

9  Case Management Statement.

10  **LAW AND MOTION**

11  8.      Any and all electronically-filed documents must be text searchable and bookmarked.

12  (*See* operative General Order re Mandatory Electronic Filing in Civil).

13  **COURTESY COPIES REQUIRED**

14  9.      Pursuant to the operative General Order re Mandatory Electronic Filing, courtesy

15  copies of certain documents must be submitted directly to the PI Court courtrooms at the

16  Spring Street Courthouse.  The PI Courts also strongly encourage the parties filing and

17  opposing lengthy motions, such as motions for summary judgment/adjudication, to submit one

18  or more three-ring binders organizing the courtesy copy behind tabs.  Any courtesy copies of

19  documents with declarations and/or exhibits must be tabbed (C.R.C. Rule 3.1110(f)).  All

20  deposition excerpts referenced in briefs must be marked on the transcripts attached as exhibits

21  (C.R.C. Rule 3.1116(c)).

22  **RESERVATION HEARING DATE**

23  10.      Parties must reserve hearing dates for motions in the PI Courts using the Court

24  Reservation System (CRS) available online at *www.lacourt.org* (link on homepage).  After

25  reserving a motion hearing date, the reservation requestor must submit the papers for filing with

26  the reservation receipt number printed on the face page of the document under the caption and

27  attach the reservation receipt as the last page.  Parties or counsel who are unable to utilize the

28  online CRS may reserve a motion hearing date by calling the PI courtroom, Monday through

First Amended Standing Order Re Personal Injury Procedures, Spring Street Courthouse

Exhibit A, Page 40

1   Friday, between 3:00 p.m. and 4:00 p.m.

2   **WITHDRAWAL OF MOTIONS**

3   11.     California Rules of Court, Rule 3.1304(b) requires a moving party to notify the court

4   immediately if a matter will not be heard on the scheduled date.  In keeping with that rule, the

5   PI Courts require parties to comply with Code of Civil Procedure section 472(a) with regard to

6   the amending of pleadings related to demurrers or motions to strike so that the PI Courts do not

7   needlessly prepare tentative rulings for these matters.

8   **DISCOVERY MOTIONS**

9   12.     The purpose of an Informal Discovery Conference ("IDC") is to assist the parties to

10   resolve and/or narrow the scope of discovery disputes. Lead trial counsel on each side, or another

11   attorney with full authority to make binding agreements, must attend in person. The PI judges

12   have found that, in nearly every case, the parties amicably resolve disputes with the assistance

13   of the Court.

14   13.     Parties **must** participate in an IDC **before** a Motion to Compel Further Responses to

15   Discovery will be heard unless the moving party submits evidence, by way of declaration, that

16   the opposing party has failed or refused to participate in an IDC.  Scheduling or participating in

17   an IDC does not automatically extend any deadlines imposed by the Code of Civil Procedure for

18   noticing and filing discovery motions.  Ideally, the parties should participate in an IDC before a

19   motion is filed because the IDC may avoid the necessity of a motion or reduce its scope.  Because

20   of that possibility, attorneys are encouraged to stipulate to extend the 45 (or 60) day deadline for

21   filing a motion to compel further discovery responses in order to allow time to participate in an

22   IDC.

23        If parties do not stipulate to extend the deadlines, the moving party may file the motion

24   to avoid it being deemed untimely.   However, the IDC must take place before the motion is

25   heard so it is suggested that the moving party reserve a date for the motion hearing that is at least

26   60 days after the date when the IDC reservation is made. Motions to Compel Further Discovery

27   Responses are heard at 10:00 a.m. If the IDC is not productive, the moving party may advance

28   the hearing on a Motion to Compel Further Discovery Responses on any available hearing date

First Amended Standing Order Re Personal Injury Procedures, Spring Street Courthouse

2020-SJ-002-00

1    that complies with the notice requirements of the Code of Civil Procedure.

2    14.    Parties must reserve IDC dates in the PI Courts using CRS, which is available online at

3    www.lacourt.org (link on homepage). Parties must meet and confer regarding the available dates

4    in CRS prior to accessing the system. After reserving the IDC date, the reservation requestor

5    must file and serve an Informal Discovery Conference Form for Personal Injury Courts (form

6    LACIV 239) at least 15 court days prior to the conference and attach the CRS reservation receipt

7    as the last page. The opposing party may file and serve a responsive IDC form, briefly setting

8    forth that party's response, at least ten court days prior to the IDC.

9    15.    Time permitting, the PI Hub judges may be available to participate in IDCs to try to

10   resolve other types of discovery disputes.

11   **EX PARTE APPLICATIONS**

12   16.    Under the California Rules of Court, courts may only grant *ex parte* relief upon a

13   showing, by admissible evidence, that the moving party will suffer "irreparable harm,"

14   "immediate danger," or where the moving party identifies "a statutory basis for granting relief

15   ex parte" (C.R.C. Rule 3.1202(c)). The PI Courts have no capacity to hear multiple *ex parte*

16   applications or to shorten time to add hearings to their fully booked motion calendars. The PI

17   Courts do not regard the Court's unavailability for timely motion hearings as an "immediate

18   danger" or threat of "irreparable harm" justifying *ex parte* relief. Instead of seeking *ex parte*

19   relief, the moving party should reserve the earliest available motion hearing date (even if it is

20   after the scheduled trial date) and file a motion to continue trial. Parties should also check

21   CRS from time to time because earlier hearing dates may become available as cases settle or

22   hearings are taken off calendar.

23   **REQUEST FOR TRANSFER TO INDEPENDENT CALENDAR DEPARTMENT**

24   17.    Parties seeking to transfer a case from a PI Court to an Independent Calendar ("IC")

25   Court shall file and serve the Court's "Motion/Opposition/Stipulation to Transfer Complicated

26   Personal Injury Case to Independent Calendar Court" (form LACIV 238, available on the Court's

27   website under the PI Courts link). The PI Courts will transfer a matter to an IC Court if the case

28   is not a "Personal Injury" case as defined in this Order, or if it is "complicated." In determining

Page **6** of **7**

Exhibit A, Page 42

2020-SJ-002-00

1  whether a personal injury case is "complicated" the PI Courts will consider, among other things,

2  the number of pretrial hearings or the complexity of issues presented.

3  18.    Parties opposing a motion to transfer have five court days to file an Opposition (using

4  the same LACIV 238 Motion to Transfer form).

5  19.    The PI Courts will not conduct a hearing on any Motion to Transfer to IC Court. Although

6  the parties may stipulate to transfer a case to an Independent Calendar Department, the PI Courts

7  will make an independent determination whether to transfer the case or not.

8  **FINAL STATUS CONFERENCE**

9  20.    Parties shall comply with the requirements of the PI Courts' operative Standing Order

10  Re Final Status Conference, which shall be served with the summons and complaint.

11  **JURY FEES**

12  21.    Parties must pay jury fees no later than 365 calendar days after the filing of the initial

13  complaint (C. C. P. § 631, subd. (c)(2)).

14  **JURY TRIALS**

15  22.    The PI Courts do not conduct jury trials.  On the trial date, a PI Court will contact the

16  Master Calendar Court, Department One, in the Stanley Mosk Courthouse.  Department One

17  will assign cases for trial to dedicated Civil Trial Courtrooms and designated Criminal

18  Courtrooms.

19  **SANCTIONS**

20  23.    The Court has discretion to impose sanctions for any violation of this general order

21  (C.C.P. §§ 128.7, 187 and Gov. Code, § 68608, subd. (b)).

22

23

24  Dated:  _Feb. 24, 2020_

25  SAMANTHA P. JESSNER
    Supervising Judge of Civil Courts

26

27

28

Page 7 of 7

First Amended Standing Order Re Personal Injury Procedures, Spring Street Courthouse

Exhibit A, Page 43

**FILED**
Superior Court of California
County of Los Angeles

**FEB 24 2020**

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Lorena Albino

2020-SJ-004-00

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| IN RE PERSONAL INJURY CASES ASSIGNED TO THE PERSONAL INJURY COURTS AT THE SPRING STREET COURTHOUSE | ) THIRD AMENDED STANDING ORDER ) RE: FINAL STATUS CONFERENCE, ) PERSONAL INJURY ("PI") COURTS ) (Effective January 13, 2020) ) |

The dates for Trial and the Final Status Conference ("FSC") having been set in this matter, the **COURT HEREBY AMENDS AND SUPERSEDES ITS August 9, 2019 STANDING ORDER RE: FINAL STATUS CONFERENCE, PERSONAL INJURY ("PI") COURTS AND, GENERALLY ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION PERSONAL INJURY ACTIONS:**

1. **PURPOSE OF THE FSC**

The purpose of the FSC is to verify that the parties/counsel are completely ready to proceed with trial continuously and efficiently, from day to day, until verdict. The PI Courts will verify at the FSC that all parties/counsel have (1) prepared the Exhibit binders and Trial Document binders and (2) met and conferred in an effort to stipulate to ultimate facts, legal issues, motions in limine, and the authentication and admissibility of exhibits.

///
///
///

Page 1 of 5

THIRD AMENDED ORDER RE FINAL STATUS CONFERENCE, PERSONAL INJURY COURTS
(Effective January 13, 2020)

Exhibit A, Page 44

2.    **TRIAL DOCUMENTS TO BE FILED**

At least five calendar days prior to the Final Status Conference, the parties/counsel shall serve and file the following Trial Readiness Documents:

A.    **TRIAL BRIEFS (OPTIONAL)**

Each party/counsel may, but is not required to, file a trial brief succinctly identifying:

(1) the claims and defenses subject to litigation;

(2) the major legal issues (with supporting points and authorities);

(3) the relief claimed and calculation of damages sought; and

(4) any other information that may assist the court at trial.

B.    **MOTIONS IN LIMINE**

Before filing motions in limine, the parties/counsel shall comply with the statutory notice provisions of Code of Civil Procedure ("C.C.P.") Section 1005 and the requirements of Los Angeles County Court Rule ("Local Rule") 3.57(a). The caption of each motion in limine shall concisely identify the evidence that the moving party seeks to preclude. Parties filing more than one motion in limine shall number them consecutively. Parties filing opposition and reply papers shall identify the corresponding motion number in the caption of their papers.

C.    **JOINT STATEMENT TO BE READ TO THE JURY**

For jury trials, the parties/counsel shall work together to prepare and file a joint written statement of the case for the court to read to the jury (Local Rule 3.25(g)(4)).

D.    **JOINT WITNESS LIST**

The parties/counsel shall work together to prepare and file a joint list of all witnesses that each party intends to call, excluding impeachment and rebuttal witnesses (Local Rule 3.25(g)(5)). The joint witness list shall identify each witness by name, specify which witnesses are experts, estimate the length of the direct, cross examination and re-direct examination (if any) of each, and include a total of the number of hours for all witness testimony. The parties/counsel shall identify all potential witness scheduling issues and special requirements. Any party/counsel who seeks to elicit testimony from a witness not identified on the witness list must first make a showing of good cause to the trial court.

THIRD AMENDED ORDER RE FINAL STATUS CONFERENCE, PERSONAL INJURY COURTS
(Effective January 13, 2020)

E.    **LIST OF PROPOSED JURY INSTRUCTIONS**

**(JOINT AND CONTESTED)**

The parties/counsel shall jointly prepare and file a list of proposed jury instructions, organized in numerical order, specifying the instructions upon which all sides agree and the contested instructions, if any.  The List of Proposed Jury Instructions must include a space by each instruction for the judge to indicate whether the instruction was given.

F.    **JURY INSTRUCTIONS**

**(JOINT AND CONTESTED)**

The parties/counsel shall prepare a complete set of full-text proposed jury instructions, editing all proposed California Civil Jury Instructions and insert party name(s) and eliminate blanks, brackets, and irrelevant material.  The parties/counsel shall prepare special instructions in a format ready for submission to the jury with the instruction number, title, and text only (i.e., there should be no boxes or other indication on the printed instruction itself as to the requesting party).

G.    **JOINT VERDICT FORM(S)**

The parties/counsel shall prepare and jointly file a proposed general verdict form or special verdict form (with interrogatories) acceptable to all sides (Local Rule 3.25(g)(8)).  If the parties/counsel cannot agree on a joint verdict form, each party must separately file a proposed verdict form.

H.    **JOINT EXHIBIT LIST**

The parties/counsel shall prepare and file a joint exhibit list organized with columns identifying each exhibit and specifying each party's evidentiary objections, if any, to admission of each exhibit.  The parties/counsel shall meet and confer in an effort to resolve objections to the admissibility of each exhibit.

I.    **PAGE AND LINE DESIGNATION FOR**

**DEPOSITION AND FORMER TESTIMONY**

If the parties/counsel intend to use deposition testimony or former trial testimony in lieu of any witness's live testimony, the parties/counsel shall meet and confer and jointly prepare and file a chart with columns for each of the following:  1) the page and line designations of the deposition or

Page 3 of 5

1  former testimony requested for use, 2) objections, 3) counter-designations, 4) any responses thereto,

2  and 5) the Court's ruling.

3  **3.      EVIDENTIARY EXHIBITS**

4         The parties/counsel shall jointly prepare (and be ready to temporarily lodge for inspection at

5  the FSC) three sets of tabbed, internally paginated by document, and properly-marked exhibits,

6  organized numerically in three-ring binders (a set for the Court, the Judicial Assistant and the

7  witnesses).  The parties/counsel shall mark all non-documentary exhibits and insert a simple written

8  description of the exhibit behind the corresponding numerical tab in the exhibit binder.  If the parties

9  have a joint signed exhibit list and electronic copies of their respective exhibits, then the

10  parties/counsel will not be required to produce exhibit binders at the FSC.  However, the exhibit

11  binders will be required by the assigned trial judge when the trial commences.  In the absence of

12  either a joint signed exhibit list or electronic copies, exhibit binders will be required to be produced

13  by all parties/counsel at the FSC.

14  **4.      TRIAL BINDERS REQUIRED IN THE PI COURTS**

15         The parties/counsel shall jointly prepare (and be ready to temporarily lodge and include the

16  following for inspection at the FSC) the Trial Documents consisting of conformed copies (if

17  available), tabbed and organized into three-ring binders with a table of contents that includes the

18  following:

19         Tab A:      Trial Briefs (Optional)

20         Tab B:      Motions in Limine

21         Tab C:      Joint Statement to Be Read to the Jury

22         Tab D:      Joint Witness List

23         Tab E:      Joint List of Jury Instructions (identifying the agreed upon and contested

24                     instructions)

25         Tab F:      Joint and Contested Jury Instructions

26         Tab G:      Joint and/or Contested Verdict Form(s)

27         Tab H:      Joint Exhibit List

28

THIRD AMENDED ORDER RE FINAL STATUS CONFERENCE, PERSONAL INJURY COURTS
(Effective January 13, 2020)

Exhibit A, Page 47

1     Tab I:        Joint Chart of Page and Line Designation(s) for Deposition and

2                   Former Testimony

3     Tab J:        Copies of the Current Operative Pleadings (including the operative complaint,

4                   answer, cross-complaint, if any, and answer to any cross-complaint).

5        The parties/counsel shall organize motions in limine (tabbed in numerical order) behind Tab

6 B with the opposition papers and reply papers for each motion placed directly behind the moving

7 papers. The parties shall organize proposed jury instructions behind Tab F, with the agreed upon

8 instructions first in order followed by the contested instructions (including special instructions)

9 submitted by each side.

10 **5. FAILURE TO COMPLY WITH FSC OBLIGATIONS**

11        The court has discretion to require any party/counsel who fails or refuses to comply with this

12 Amended Standing Order to Show Cause why the Court should not impose monetary, evidentiary

13 and/or issue sanctions (including the entry of a default or the striking of an answer).

14

15

16 Dated: _Feb. 24, 2020_                 _[signature]_

17                             SAMANTHA P. JESSNER

                              Supervising Judge of Civil Courts

18

19

20

21

22

23

24

25

26

27

28

THIRD AMENDED ORDER RE FINAL STATUS CONFERENCE, PERSONAL INJURY COURTS
(Effective January 13, 2020)

Exhibit A, Page 48

2020-SJ-003-00

**FILED**
Superior Court of California
County of Los Angeles

**FEB 24 2020**

Sherri R. Carter, Executive Officer/Clerk

By _____ Deputy
Lorena Albino



## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE PERSONAL INJURY CASES ASSIGNED TO PERSONAL INJURY COURTROOMS AT THE SPRING STREET COURTHOUSE | ) FIFTH AMENDED STANDING ORDER ) RE: MANDATORY SETTLEMENT ) CONFERENCE ) (Effective February 24, 2020) ) |

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

Pursuant to California Code of Civil Procedure, the California Rules of Court and the Los Angeles Court Rules, the Los Angeles Superior Court ("Court") HEREBY AMENDS AND SUPERSEDES THE September 26, 2019 FOURTH AMENDED STANDING ORDER, AND THE COURT HEREBY ISSUES THE FOLLOWING FIFTH AMENDED STANDING ORDER:

The Court orders the parties to participate in a Mandatory Settlement Conference ("MSC") supervised by a Personal Injury Court Judge and staffed by volunteer settlement attorneys from the American Board of Trial Advocates, the Association of Southern California Defense Counsel, and the Consumer Attorneys Association of Los Angeles.

1. Plaintiff's counsel shall, within two (2) court days of the Court's order of an MSC, access the Consumer Attorneys Association of Los Angeles ("CAALA") website, at www.caala.org, and under "The LASC COURT CONNECTION" click on "LA Superior Court PI MSC (Parties)," to register and schedule a mutually agreed upon time for the MSC prior to the trial date.

2. A mandatory settlement conference statement shall be served on all parties not less than five (5) court days before the scheduled MSC. Parties' counsel shall serve

---

FIFTH AMENDED STANDING ORDER – MANDATORY SETTLEMENT CONFERENCE

2020-SJ-003-00

1   opposing counsel, CAALA at stuart@caala.org, and the Court by email.   Email

2   addresses for the PI courtrooms can be found on the Court's website at

3   www.lacourt.org, under "*Division*" go to "*Civil*", then go to "*General Jurisdiction*

4   *PI Court*" then click on "*PI Courtroom Email Addresses*".   CAALA will forward

5   the mandatory settlement conference statements to the settlement attorneys.

6   3.  Pursuant to California Rules of Court, Rule 3.1380(b) and Los Angeles Superior

7       Court Rule 3.25(d), trial counsel, the parties and persons, including insurance

8       company representatives with full settlement authority, must attend in person unless

9       the settlement judge excuses personal appearance for good cause.

10  4.  If the case settles prior to the scheduled MSC, Plaintiff's counsel shall notify the

11      specific Courtroom, forthwith, of such settlement by email and also CAALA by email

12      to stuart@caala.org.

13  5.  Parties and counsel are ordered to appear in in the assigned Personal Injury

14      Courtroom at the scheduled time and date of the MSC as selected by the parties'

15      counsel.

16  6.  The Court has the discretion to require any party and/or counsel who fails or refuses

17      to comply with this order to show cause why the Court should not impose monetary

18      sanctions.

19

20

21  Dated:   _Feb. 24, 2020_

22                                              SAMANTHA P. JESSNER
                                                Supervising Judge of Civil Courts
23

24

25

26

27

28

2

FIFTH AMENDED STANDING ORDER – MANDATORY SETTLEMENT CONFERENCE

Exhibit A, Page 50

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California County of Los Angeles**



**Los Angeles County Bar Association Litigation Section**

**Los Angeles County Bar Association Labor and Employment Law Section**



**Consumer Attorneys Association of Los Angeles**



**Southern California Defense Counsel**



**Association of Business Trial Lawyers**

**California Employment Lawyers Association**

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆Los Angeles County Bar Association Litigation Section◆

◆ Los Angeles County Bar Association Labor and Employment Law Section◆

◆Consumer Attorneys Association of Los Angeles◆

◆Southern California Defense Counsel◆

◆Association of Business Trial Lawyers◆

◆California Employment Lawyers Association◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

LACIV 229 (Rev 02/15)
LASC Approved 04/11
For Optional Use

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):           FAX NO. (Optional):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i.   File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii.  Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i.   Also be filed on the approved form (copy attached);

      ii.  Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER |
|---|---|
| | |

     iii.   Be filed within two (2) court days of receipt of the Request; and

     iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

Exhibit A, Page 55

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 3 of 3

Exhibit A, Page 56

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:  FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐    Request for Informal Discovery Conference
   ☐    Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date:   _____

_____
JUDICIAL OFFICER

 **Superior Court of California, County of Los Angeles**

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

> **Mediation may be appropriate when the parties**
> - want to work out a solution but need help from a neutral person.
> - have communication problems or strong emotions that interfere with resolution.
>
> **Mediation may not be appropriate when the parties**
> - want a public trial and want a judge or jury to decide the outcome.
> - lack equal bargaining power or have a history of physical/emotional abuse.

**How to arrange mediation in Los Angeles County**

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases)

   - **ADR Services, Inc.** Case Manager patricia@adrservices.com (310) 201-0010 (Ext. 261)
   - **JAMS, Inc.** Senior Case Manager mbinder@jamsadr.com (310) 309-6204
   - **Mediation Center of Los Angeles (MCLA)** Program Manager info@mediationLA.org (833) 476-9145
     - Only MCLA provides mediation in person, by phone and by videoconference.

   **These organizations cannot accept every case and they may decline cases at their discretion.**
   Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.
   NOTE: This program does not accept family law, probate, or small claims cases.

b. **Los Angeles County Dispute Resolution Programs**
   https://wdacs.lacounty.gov/programs/drp/
   - Small claims, unlawful detainers (evictions) and, at the Spring Street Courthouse, limited civil:
     - Free, day-of-trial mediations at the courthouse. No appointment needed.
     - Free or low-cost mediations before the day of trial.
     - For free or low-cost Online Dispute Resolution (ODR) by phone or computer before the day of trial visit
       http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c. **Mediators and ADR and Bar organizations** that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit **http://www.courts.ca.gov/programs-adr.htm**

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit **http://www.lacourt.org/division/civil/CI0047.aspx**

Los Angeles Superior Court ADR website: **http://www.lacourt.org/division/civil/CI0109.aspx**
For general information and videos about ADR, visit **http://www.courts.ca.gov/programs-adr.htm**

LASC CIV 271 Rev. 01/20
For Mandatory Use

2

Exhibit A, Page 61

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**10/01/2020**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ R. Clifton _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br>UNLIMITED CIVIL CASE | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>20STCV37821 |

<u>THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT</u>

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Kristin S. Escalante | 29 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on  10/02/2020
　　　(Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By R. Clifton _____ , Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

LACIV 190 (Rev 6/18)
LASC Approved 05/06

Exhibit A, Page 62

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

Exhibit A, Page 63

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**10/14/2020**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ M. Marquez _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Cami Stein | |
| DEFENDANT/RESPONDENT:<br>Lumber Liquidators, Inc., a Delaware Corporation et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>20STCV37821 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the PI General Order, Standing Order re PI Procedures and Hearing Date  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

John  Adams III
Hunt & Adams, Inc.
2070 N. Tustin Avenue
Santa Ana, CA  92705

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 10/14/2020          By: _M. Marquez_____
                                                Deputy Clerk

CERTIFICATE OF MAILING

2018-SJ-007-00

**FILED**
Superior Court of California
County of Los Angeles

APR 16 2018

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Stephanie Chung

1

2

3

4        SUPERIOR COURT OF THE STATE OF CALIFORNIA

5            FOR THE COUNTY OF LOS ANGELES

6

7   IN RE PERSONAL INJURY          ) CASE NO.: 20STCV37821
    COURT ("PI COURT") PROCEDURES, )
8   **CENTRAL DISTRICT**           ) STANDING ORDER RE: PERSONAL
    (EFFECTIVE APRIL 16, 2018)     ) INJURY PROCEDURES, CENTRAL
9                                  ) DISTRICT
                                   )
10  _____ )

11

12

13  DEPARTMENT: **29**  2☐   3☐   4☐   5☐ 7☐

14  **FINAL STATUS CONFERENCE ("FSC"):**

15

16      • DATE: ____03/17/2022____ AT 10:00 A.M.

17              **TRIAL:**

18      • DATE: ____04/01/2022____ AT 8:30 A.M.

19  **OSC RE DISMISSAL (CODE CIV. PROC., § 583.210):**

20

21      • DATE: ____09/28/2023____ AT 8:30 A.M.

22      TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

23      Pursuant to the California Code of Civil Procedure ("C.C.P."), the California Rules

24  of Court ("C.R.C.") and the Los Angeles County Court Rules ("Local Rules"), the Los

25  Angeles Superior Court ("LASC" or "Court") HEREBY AMENDS AND SUPERSEDES

26  THE AUGUST 10, 2017 SEVENTH AMENDED GENERAL ORDER AND, GENERALLY,

27  ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION

28  PERSONAL INJURY ACTIONS FILED IN THE CENTRAL DISTRICT.

Page 1 of 8

2018-SJ-007-00

1.     To ensure proper assignment to a PI Court, Plaintiff(s) must carefully fill out the Civil Case Cover Sheet Addendum (form LACIV 109). The Court defines "personal injury" as:

> "an unlimited civil case described on the Civil Case Cover Sheet Addendum and Statement of Location (LACIV 109) as Motor Vehicle-Personal Injury/Property Damage/Wrongful Death; Personal Injury/Property Damage/Wrongful Death-Uninsured Motorist; Product Liability (other than asbestos or toxic/environmental); Medical Malpractice-Physicians & Surgeons; Other Professional Health Care Malpractice; Premises Liability; Intentional Bodily Injury/Property Damage/Wrongful Death; or Other Personal Injury/Property Damage/Wrongful Death. An action for intentional infliction of emotional distress, defamation, civil rights/discrimination, or malpractice (other than medical malpractice), is not included in this definition. An action for injury to real property is not included in this definition." (Local Rule 2.3(a)(1)(A).)

Consistent with Local Rule 2.3(a)(1)(A), the Court will assign a case to the PI Courts if plaintiff(s) check any of the following boxes in the Civil Case Cover Sheet Addendum:

> A7100 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death
>
> A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist
>
> A7260 Product Liability (not asbestos or toxic/environmental)
>
> A7210 Medical Malpractice – Physicians & Surgeons
>
> A7240 Medical Malpractice – Other Professional Health Care Malpractice
>
> A7250 Premises Liability (e.g., slip and fall)
>
> A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism etc.)
>
> A7220 Other Personal Injury/Property Damage/Wrongful Death

The Court will not assign cases to the PI Courts if plaintiff(s) check any boxes elsewhere in the Civil Case Cover Sheet Addendum (any boxes on pages two and three of that form).

///

Standing Order Re Personal Injury Procedures, Central District

Exhibit A, Page 66

2018-SJ-007-00

1   The Court sets the above dates in this action in the PI Court circled above (Department

2   2, 3, 4, 5, or 7) at the Spring Street Courthouse, 312 North Spring Street, Los Angeles, CA 90012.

3   (C.R.C. Rules 3.714(b)(3), 3.729.)

4   **FILING OF DOCUMENTS**

5   2.   Parties may file documents in person at the filing window on the first floor of the Stanley

6   Mosk Courthouse (111 N. Hill Street, Los Angeles, CA 90012) or by U.S. Mail or e-Delivery,

7   which is available online at *www.lacourt.org* (link on homepage). Please note that filings are no

8   longer accepted via facsimile and must be filed either in person, via U.S. mail or via e-Delivery.

9   Claims involving an attorney-client fee dispute, documents in which the filing party is a minor,

10   legally incompetent person, or person for whom a conservator has been appointed, requests to

11   waive court fees (FW-001) and requests for accommodations by persons with disabilities (MC-

12   410), may not be filed via e-Delivery.

13   **SERVICE OF SUMMONS AND COMPLAINT**

14   3.   Plaintiff(s) shall serve the summons and complaint in this action upon defendant(s) as

15   soon as possible but no later than three years from the date when the complaint is filed.

16   (C.C.P. § 583.210, subd.(a).)   On the OSC re Dismissal date noted above, the PI Court will

17   dismiss the action and/or all unserved parties unless the plaintiff(s) show cause why the action

18   or the unserved parties should not be dismissed. (C.C.P. §§ 583.250; 581, subd. (b)(4).)

19   4.   The Court sets the above trial and FSC dates on condition that plaintiff(s) effectuate

20   service on defendant(s) of the summons and complaint within six months of filing the complaint.

21   5.   The PI Court will dismiss the case without prejudice pursuant to C.C.P. § 581 when no

22   party appears for trial.

23   **STIPULATIONS TO CONTINUE TRIAL**

24   6.   Provided that all parties agree (and there is no violation of the "five-year rule," C.C.P.

25   § 583.310), the parties may advance or continue any trial date in the PI Courts without showing

26   good cause or articulating any reason or justification for the change.   To continue or advance a

27   trial date, the parties (or their counsel of record) should jointly execute and submit (at the filing

28   window on the first floor of the Stanley Mosk Courthouse, via U.S. mail or via e-Delivery; fee

Page 3 of 8

Standing Order Re Personal Injury Procedures, Central District

Exhibit A, Page 67

2018-SJ-007-00

1   required) a Stipulation to Continue Trial, FSC and Related Motion/Discovery Dates (form

2   LACIV CTRL-242, available on the court's website, Personal Injury Court link). The PI Courts

3   schedule FSCs for 10:00 a.m., eight (8) court days before the trial date.  Parties seeking to

4   continue the trial and FSC dates shall file the Stipulation at least eight court days before the FSC

5   date.  Parties seeking to advance the trial and FSC dates shall file the Stipulation at least eight

6   court days before the proposed advanced FSC date. (C.C.P. § 595.2;  Govt. Code § 70617, subd.

7   (c)(2).)  In selecting a new trial date, parties should avoid setting on any Monday, or the Tuesday

8   following a court holiday.  Parties may submit a maximum of two stipulations to continue trial,

9   for a total continuance of six months. Subsequent requests to continue trial will be granted upon

10  a showing of good cause by noticed motion.  This rule is retroactive so that any previously

11  granted stipulation to continue trial will count toward the maximum number of allowed

12  continuances.

13  **NO CASE MANAGEMENT CONFERENCES**

14  7.      The PI Courts do not conduct Case Management Conferences.  The parties need not file

15  a Case Management Statement.

16  **LAW AND MOTION**

17  8.      Any documents with declarations and/or exhibits must be tabbed.  (C.R.C. Rule

18  3.1110(f).)  All depositions excerpts referenced in briefs must be marked on the transcripts

19  attached as exhibits.  (C.R.C. Rule 3.1116(c).)

20  **CHAMBERS COPIES REQUIRED**

21  9.      In addition to filing original motion papers at the filing window on the first floor of the

22  Stanley Mosk Courthouse, via U.S. mail or via e-Delivery, the parties must deliver, directly to

23  the PI Court courtrooms at the Spring Street Courthouse, an extra copy (marked "Chambers

24  Copy") of reply briefs and all other motion papers filed less than seven (7) court days before a

25  hearing calendared in the PI Courts. The PI Courts also strongly encourage the parties filing and

26  opposing lengthy motions, such as motions for summary judgment/adjudication, to submit one

27  or more three-ring binders organizing the chambers copy behind tabs.

28  ///

Standing Order Re Personal Injury Procedures, Central District

2018-SJ-007-00

1   **RESERVATION HEARING DATE**

2   10.     Parties are directed to reserve hearing dates for motions in the PI Courts using the Court

3   Reservation System (CRS) available online at *www.lacourt.org* (link on homepage). After

4   reserving a motion hearing date, the reservation requestor must submit the papers for filing with

5   the reservation receipt (CRS) number printed on the face page of the document under the caption

6   and attach the reservation receipt as the last page. Parties or counsel who are unable to utilize

7   the online CRS may reserve a motion hearing date by calling the PI Court courtroom, Monday

8   through Friday, between 3:00 p.m. and 4:00 p.m.

9   **WITHDRAWAL OF MOTIONS**

10  11.     California Rules of Court, Rule 3.1304(b) requires a moving party to notify the court

11  immediately if a matter will not be heard on the scheduled date. In keeping with that rule, the PI

12  Courts urge parties who amend pleadings in response to demurrers to file amended pleadings

13  before the date when opposition to the demurrer is due so that the PI Courts do not needlessly

14  prepare tentative rulings on demurrers.

15  **DISCOVERY MOTIONS**

16  12.     The purpose of an Informal Discovery Conference ("IDC") is to assist the parties to

17  resolve and/or narrow the scope of discovery disputes. Lead trial counsel on each side, or another

18  attorney with full authority to make binding agreements, must attend in person. The PI judges

19  have found that, in nearly every case, the parties amicably resolve disputes with the assistance

20  of the Court.

21  13.     Parties **must** participate in an IDC **before** a Motion to Compel Further Responses to

22  Discovery will be heard unless the moving party submits evidence, by way of declaration, that

23  the opposing party has failed or refused to participate in an IDC. Scheduling or participating in

24  an IDC does not automatically extend any deadlines imposed by the Code of Civil Procedure for

25  noticing and filing discovery motions. Ideally, the parties should participate in an IDC before a

26  motion is filed because the IDC may avoid the necessity of a motion or reduce its scope. Because

27  of that possibility, attorneys are encouraged to stipulate to extend the 45 (or 60) day deadline for

28  filing a motion to compel further discovery responses in order to allow time to participate in an

2018-SJ-007-0(

1   IDC.

2          If parties do not stipulate to extend the deadlines, the moving party may file the motion

3   to avoid it being deemed untimely.   However, the IDC must take place before the motion is

4   heard so it is suggested that the moving party reserve a date for the motion hearing that is *at least*

5   *60 days* after the date when the IDC reservation is made.  Motions to Compel Further Discovery

6   Responses are heard at 10:00 a.m.  If the IDC is not productive, the moving party may advance

7   the hearing on a Motion to Compel Further Discovery Responses on any available hearing date

8   that complies with the notice requirements of the Code of Civil Procedure.

9   14.    Parties are directed to reserve IDC dates in the PI Courts using CRS available online at

10  www.lacourt.org (link on homepage).  Parties are to meet and confer regarding the available

11  dates in CRS prior to accessing the system.  After reserving the IDC date, the reservation

12  requestor must file in the appropriate department and serve an Informal Discovery Conference

13  Form for Personal Injury Courts, from LACIV 239 (revised 12/14 or later), at least 15 court days

14  prior to the conference and attach the CRS reservation receipt as the last page.  The opposing

15  party may file and serve a responsive IDC form, briefly setting forth that party's response, at

16  least 10 court days prior to the IDC.

17  15.    Time permitting, the PI Hub judges may be available to participate in IDCs to try to

18  resolve other types of discovery disputes.

19  **EX PARTE APPLICATIONS**

20  16.    Under the California Rules of Court, courts may only grant *ex parte* relief upon a

21  showing, by admissible evidence, that the moving party will suffer "irreparable harm,"

22  "immediate danger," or where the moving party identifies "a statutory basis for granting relief

23  ex parte." (C.R.C. Rule 3.1202(c).) The PI Courts have no capacity to hear multiple *ex parte*

24  applications or to shorten time to add hearings to their fully booked motion calendars.  The PI

25  Courts do not regard the Court's unavailability for timely motion hearings as an "immediate

26  danger" or threat of "irreparable harm" justifying *ex parte* relief.  Instead of seeking *ex parte*

27  relief, the moving party should reserve the earliest available motion hearing date (even if it is

28  after the scheduled trial date) and should file a motion to continue trial. Parties should also check

Page 6 of 8

Standing Order Re Personal Injury Procedures, Central District

2018-SJ-007-00

1  the Court Reservation System from time to time because earlier hearing dates may become

2  available as cases settle or hearings are taken off calendar.

3  **REQUEST FOR TRANSFER TO INDEPENDENT CALENDAR DEPARTMENT**

4  17.   Parties seeking to transfer a case from a PI Court to an Independent Calendar ("I/C")

5  Court shall file (at the filing window on the first floor of the Stanley Mosk Courthouse, via U.S.

6  mail or via e-Delivery) and serve the Court's "Motion to Transfer Complicated Personal Injury

7  Case to Independent Calendar Court" (form LACIV 238, available on the Court's website under

8  the PI Courts link).   The PI Courts will transfer a matter to an I/C Court if the case is not a

9  "Personal Injury" case as defined in this Order, or if it is "complicated." In determining whether

10  a personal injury case is "complicated" the PI Courts will consider, among other things, the

11  number of pretrial hearings or the complexity of issues presented.

12  18.   Parties opposing a motion to transfer have five court days to file (at the filing window

13  on the first floor of the Stanley Mosk Courthouse, via U.S. mail or via e-Delivery) an Opposition

14  (using the same LACIV 238 Motion to Transfer form).

15  19.   The PI Courts will not conduct a hearing on any Motion to Transfer to I/C Court.

16  Although the parties may stipulate to transfer a case to an Independent Calendar Department, the

17  PI Courts will make an independent determination whether to transfer the case or not.

18  **FINAL STATUS CONFERENCE**

19  20.   Parties shall comply with the requirements of the PI Courts' "First Amended Standing

20  Order Re Final Status Conference," which shall be served with the summons and complaint.

21  **JURY FEES**

22  21.   Parties must pay jury fees no later than 365 calendar days after the filing of the initial

23  complaint. (C. C. P. § 631, subds. (b) and (c).)

24  **JURY TRIALS**

25  22.   The PI Courts do not conduct jury trials.  On the trial date, a PI Court will contact the

26  Master Calendar Court, Department One, in the Stanley Mosk Courthouse.  Department One

27  will assign cases out for trial to dedicated Civil Trial Courtrooms and designated Criminal

28  Courtrooms.

Page **7** of **8**

Standing Order Re Personal Injury Procedures, Central District

Exhibit A, Page 71

2018-SJ-007-00

1  SANCTIONS

2  23.     The Court has discretion to impose sanctions for any violation of this general order.

3  (C.C.P. §§ 128.7, 187 and Gov. Code, § 68608, subd. (b).)

4

5

6  Dated: *April 16, 2018*                    *Debra K Weintraub*

7                                             Debra K. Weintraub
                                              Supervising Judge of Civil Courts
8                                             Los Angeles Superior Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28